NOTICE OF OBJECTION TO CONFIRMATION

FREEDOM MORTGAGE CORPORATION has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if you want the Court to consider your views on the Objection, then on or before, you or your attorney must:

File with the Court an answer, explaining your position at:
**Clerk**
**U.S. Bankruptcy Court**
**402 E. State Street**
**Trenton, NJ 08608**

If you mail your response to the Court for filing, you must mail it early enough so that the Court will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103

Albert Russo, Trustee
Standing Chapter 13 Trustee, CN4853
Trenton, NJ 08650-4853

Attend the hearing scheduled to be held on 03/04/2020 in the TRENTON Bankruptcy Court, at the following address:
**U.S. Bankruptcy Court**
**402 E. State Street**
**Trenton, NJ 08608**

If you or your attorney do not make these steps, the Court may decide that you do not oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: February 4, 2020

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

**File No. 833099**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
FREEDOM MORTGAGE CORPORATION

| In Re: | UNITED STATES BANKRUPTCY COURT |
| --- | --- |

In Re:
    KEVIN MICHAEL O'CONNOR

Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON VICINAGE

Chapter 13

Case No. 19-31145 - CMG

Hearing Date: 03/04/2020

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor, FREEDOM MORTGAGE CORPORATION, the holder of a Mortgage on debtors residence located at 115 HAWTHORNE STREET, NEPTUNE, NJ 07753 hereby objects to the Confirmation of the debtors proposed Chapter 13 Plan on the following grounds:

    1.    On January 8, 2020, Movant filed Proof of Claim listing pre-petition arrears in the amount of $34,193.98. A copy of the Proof of Claim is attached hereto as Exhibit "A" and made a part hereof.

    2.    Debtors' Plan fails to cure the delinquency pursuant to 11 U.S.C. §1322(b)(5).  A copy of the Debtor's Plan is attached hereto as Exhibit "B" and made a part hereof.

    3.    Debtors' Plan currently provides for payment to Movant in the amount of $21,566.00. Movant therefore objects to Debtors' Plan as it is underfunded. Debtors' Plan should be further amended to fully fund the arrears owed to Movant or Confirmation should be denied.

4.       Debtors' Plan is speculative in nature in that it contemplates curing these arrears through a loan modification that has neither been offered nor approved. Movant further objects to any post-petition monthly payment amount less than 100% of what is required under the terms of the loan documents. Debtors' failure to provide full post-petition mortgage payments will only increase the arrears owed to Movant. Debtors' Plan should be amended to fully fund the arrears owed to Movant pending the loan modification or Confirmation should be denied.

WHEREFORE, FREEDOM MORTGAGE CORPORATION respectfully requests that the Confirmation of Debtors Plan be denied.

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

Dated: February 4, 2020

# EXHIBIT A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | KEVIN MICHAEL O'CONNOR |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court for the: | TRENTON Vicinage of the    District of New Jersey |
| | (State) |
| Case Number | 19-31145 CMG |

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

The law requires that filer **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500.000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157, and 3571.
**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| **1.  Who is the current creditor?** | FREEDOM MORTGAGE CORPORATION<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| **2.  Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes. From Whom? _____ |

**3.  Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| FREEDOM MORTGAGE | FREEDOM MORTGAGE |
| Bankruptcy Department, 10500 KINCAID DRIVE | Cash Management, 10500 KINCAID DRIVE |
| Number          Street | Number          Street |
| FISHERS        IN          46037 | FISHERS        IN          46037 |
| City        State        Zip | City        State        Zip |
| Contact Phone  (855) 690-5900 | Contact Phone _____ |
| Contact Email  bankruptcy@freedommortgage.com | Contact Email _____ |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one) | |

| | |
|---|---|
| **4.  Does this claim amend one already filed?** | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____        Filed on _____ |
| **5.  Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

| **Part 2:** | **Give Information about the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1706

**7. How much is the claim?**   $314,270.90 . **Does this amount include interest or other charges?**

☐ No
☒ Yes.   Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach any document supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9. Is all or part of the claim secured?**

☐ No
☒ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official form 410-A) with the *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe:   115 HAWTHORNE STREET, NEPTUNE, NJ 07753

**Basis for perfection:**   Recorded Mortgage
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

| | |
|---|---|
| **Value of property:** | $ _____ |
| **Amount of the claim that is secured:** | $ _$314,270.90_ |
| **Amount of the claim that is unsecured:** | $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.) |

**Amount necessary to cure any default as of the date of the petition:**   $ _$34,193.98_

**Annual Interest Rate** (when case was filed) 3.25%
☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☒ No
☐ Yes.   **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right to setoff?**

☒ No
☐ Yes.   Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ | No | |
|---|---|---|---|---|
| | | ☐ | Yes. *Check all that apply:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligation (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).        $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family or household use. 11 U.S.C. § 507(a)(7).        $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).        $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).        $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).        $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.        $ _____

*Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it.
FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     December 12, 2019
                     MM / DD / YYYY

/s/ Sherri J. Smith
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Sherri J. Smith, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Phelan Hallinan Diamond & Jones, PC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 JFK Boulevard, Suite 1400 | | |
| | Philadelphia, PA 19103 | | |
| Contact phone | 856-813-5500 | Email | Sherri.Smith@phelanhallinan.com |

# Mortgage Proof of Claim Attachment

(12/15)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions**

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case Number: 19-31145 CMG | Principal balance: $291,785.17 | Principal & interest due: $23,019.84 | Principal & interest: $1,438.74 |
| Debtor 1: KEVIN MICHAEL O'CONNOR | Deferred Principal: $0.00 | Prepetition fees due: $6,703.19 | Monthly escrow: $259.33 |
| Debtor 2: | Interest due: $12,608.28 | Escrow deficiency for funds advanced: $3,174.26 | Private mortgage insurance: $0.00 |
| Last 4 digits to identify: 1706 | Fees, costs due: $6,703.19 | Projected escrow shortage: $1,296.69 | Total monthly payment: $1,698.07 |
| Creditor: FREEDOM MORTGAGE CORPORATION | Escrow deficiency for funds advanced: $3,174.26 | Less funds on hand: - $0.00 | |
| Servicer: FREEDOM MORTGAGE | Less total funds on hand: - $0.00 | Total prepetition arrearage: $34,193.98 | |
| Fixed accrual/daily simple interest/other: Fixed Accrual | Total debt: $314,270.90 | | |

## Part 5: Loan Payment History from First Date of Default:

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance after Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual Payment amount | **C.** Funds received | **D.** Amount Incurred | **E.** Description | **F.** Contractual Due Date | **G.** Prin. Int & esc past due balance | **H.** Amount to Principal | **I.** Amount to Interest | **J.** Amount to Escrow | **K.** Amount to Fees or Charges | **L.** Unapplied funds | **M.** Principal Balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges Balance | **Q.** Unapplied Funds Balance |
| 08/01/2018 | | | | Beginning Balance | | | | | | | | $291,785.17 | | $332.74 | $0.00 | $0.00 |
| 08/01/2018 | $1,587.32 | | | Payment Due | | $1,587.32 | | | | | | $291,785.17 | | $332.74 | $0.00 | $0.00 |
| 08/01/2018 | | $1,587.32 | | Payment Applied | 08/01/2018 | $0.00 | $648.49 | $790.25 | $148.58 | | | $291,136.68 | | $481.32 | $0.00 | $0.00 |
| 08/10/2018 | | | $63.49 | Payment Reversal | (08/01/2018) | $1,587.32 | ($648.49) | ($790.25) | ($148.58) | | | $291,785.17 | | $332.74 | $0.00 | $0.00 |
| 08/16/2018 | | | $63.49 | Late Charge | | $1,587.32 | | | | ($63.49) | | $291,785.17 | | $332.74 | $63.49 | $0.00 |
| 08/31/2018 | | $1,587.32 | | Payment Applied | 08/01/2018 | $0.00 | $648.49 | $790.25 | $148.58 | | | $291,136.68 | | $481.32 | $63.49 | $0.00 |
| 09/01/2018 | $1,587.32 | | | Payment Due | | $1,587.32 | | | | | | $291,136.68 | | $481.32 | $63.49 | $0.00 |
| 09/11/2018 | | | | Payment Reversal | (08/01/2018) | $3,174.64 | ($648.49) | ($790.25) | ($148.58) | | | $291,785.17 | | $332.74 | $63.49 | $0.00 |
| 09/16/2018 | | | $63.49 | Late Charge | | $3,174.64 | | | | ($63.49) | | $291,785.17 | | $332.74 | $126.98 | $0.00 |
| 09/17/2018 | | | $15.00 | Property Inspection | | $3,174.64 | | | | ($15.00) | | $291,785.17 | | $332.74 | $141.98 | $0.00 |
| 10/01/2018 | $1,587.32 | | | Payment Due | | $4,761.96 | | | | | | $291,785.17 | | $332.74 | $141.98 | $0.00 |
| 10/15/2018 | | | $25.00 | Property Inspection | | $4,761.96 | | | | ($25.00) | | $291,785.17 | | $332.74 | $166.98 | $0.00 |
| 10/16/2018 | | | $63.49 | Late Charge | | $4,761.96 | | | | ($63.49) | | $291,785.17 | | $332.74 | $230.47 | $0.00 |
| 11/01/2018 | $1,587.32 | | | Payment Due | | $6,349.28 | | | | | | $291,785.17 | | $332.74 | $230.47 | $0.00 |
| 11/16/2018 | | | $63.49 | Late Charge | | $6,349.28 | | | | ($63.49) | | $291,785.17 | | $332.74 | $293.96 | $0.00 |
| 11/19/2018 | | | $25.00 | Property Inspection | | $6,349.28 | | | | ($25.00) | | $291,785.17 | | $332.74 | $318.96 | $0.00 |
| 12/01/2018 | $1,611.65 | | | Payment Due | | $7,960.93 | | | | | | $291,785.17 | | $332.74 | $318.96 | $0.00 |
| 12/16/2018 | | | $64.46 | Late Charge | | $7,960.93 | | | | ($64.46) | | $291,785.17 | | $332.74 | $383.42 | $0.00 |
| 12/17/2018 | | | $25.00 | Property Inspection | | $7,960.93 | | | | ($25.00) | | $291,785.17 | | $332.74 | $408.42 | $0.00 |
| 01/01/2019 | $1,611.65 | | | Payment Due | | $9,572.58 | | | | | | $291,785.17 | | $332.74 | $408.42 | $0.00 |
| 01/16/2019 | | | $64.46 | Late Charge | | $9,572.58 | | | | ($64.46) | | $291,785.17 | | $332.74 | $472.88 | $0.00 |
| 01/17/2019 | | | $100.00 | Legal Costs | | $9,572.58 | | | | ($100.00) | | $291,785.17 | | $332.74 | $572.88 | $0.00 |
| 01/17/2019 | | | $25.00 | Property Inspection | | $9,572.58 | | | | ($25.00) | | $291,785.17 | | $332.74 | $597.88 | $0.00 |



| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/01/2019 | $1,611.65 | | Payment Due | $11,184.23 | | | | $291,785.17 | $332.74 | $597.88 | $0.00 |
| 02/16/2019 | | $64.46 | Late Charge | $11,184.23 | | | ($64.46) | $291,785.17 | $332.74 | $662.34 | $0.00 |
| 02/16/2019 | | $25.00 | Property Inspection | $11,184.23 | | | ($25.00) | $291,785.17 | $332.74 | $687.34 | $0.00 |
| 03/01/2019 | $1,611.65 | | Payment Due | $12,795.88 | | | | $291,785.17 | $332.74 | $687.34 | $0.00 |
| 03/16/2019 | | $64.46 | Late Charge | $12,795.88 | | | ($64.46) | $291,785.17 | $332.74 | $751.80 | $0.00 |
| 03/16/2019 | | $25.00 | Property Inspection | $12,795.88 | | | ($25.00) | $291,785.17 | $332.74 | $776.80 | $0.00 |
| 04/01/2019 | $1,611.65 | | Payment Due | $14,407.53 | | | | $291,785.17 | $332.74 | $776.80 | $0.00 |
| 04/16/2019 | | $64.46 | Late Charge | $14,407.53 | | | ($64.46) | $291,785.17 | $332.74 | $841.26 | $0.00 |
| 04/19/2019 | | $25.00 | Property Inspection | $14,407.53 | | | ($25.00) | $291,785.17 | $332.74 | $866.26 | $0.00 |
| 04/30/2019 | | $40.00 | Legal Costs | $14,407.53 | | | ($40.00) | $291,785.17 | $332.74 | $906.26 | $0.00 |
| 04/30/2019 | | $260.00 | Legal Costs | $14,407.53 | | | ($260.00) | $291,785.17 | $332.74 | $1,166.26 | $0.00 |
| 04/30/2019 | | $75.00 | Legal Costs | $14,407.53 | | | ($75.00) | $291,785.17 | $332.74 | $1,241.26 | $0.00 |
| 04/30/2019 | | $595.00 | Legal Fees | $14,407.53 | | | ($595.00) | $291,785.17 | $332.74 | $1,836.26 | $0.00 |
| 05/01/2019 | $1,611.65 | | Payment Due | $16,019.18 | | | | $291,785.17 | $332.74 | $1,836.26 | $0.00 |
| 05/16/2019 | | $1,988.00 | Escrow Advance - Insurance | $16,019.18 | | ($1,988.00) | | $291,785.17 | ($1,655.26) | $1,836.26 | $0.00 |
| 05/16/2019 | | $64.46 | Late Charge | $16,019.18 | | | ($64.46) | $291,785.17 | ($1,655.26) | $1,900.72 | $0.00 |
| 05/16/2019 | | $250.00 | Legal Costs | $16,019.18 | | | ($250.00) | $291,785.17 | ($1,655.26) | $2,150.72 | $0.00 |
| 05/16/2019 | | $7.52 | Legal Costs | $16,019.18 | | | ($7.52) | $291,785.17 | ($1,655.26) | $2,158.24 | $0.00 |
| 05/16/2019 | | $350.00 | Legal Costs | $16,019.18 | | | ($350.00) | $291,785.17 | ($1,655.26) | $2,508.24 | $0.00 |
| 05/16/2019 | | $1,487.50 | Legal Fees | $16,019.18 | | | ($1,487.50) | $291,785.17 | ($1,655.26) | $3,995.74 | $0.00 |
| 05/20/2019 | | $25.00 | Property Inspection | $16,019.18 | | | ($25.00) | $291,785.17 | ($1,655.26) | $4,020.74 | $0.00 |
| 06/01/2019 | $1,611.65 | | Payment Due | $17,630.83 | | | | $291,785.17 | ($1,655.26) | $4,020.74 | $0.00 |
| 06/16/2019 | | $64.46 | Late Charge | $17,630.83 | | | ($64.46) | $291,785.17 | ($1,655.26) | $4,085.20 | $0.00 |
| 06/19/2019 | | $15.00 | Property Inspection | $17,630.83 | | | ($15.00) | $291,785.17 | ($1,655.26) | $4,100.20 | $0.00 |
| 07/01/2019 | $1,611.65 | | Payment Due | $19,242.48 | | | | $291,785.17 | ($1,655.26) | $4,100.20 | $0.00 |
| 07/16/2019 | | $64.46 | Late Charge | $19,242.48 | | | ($64.46) | $291,785.17 | ($1,655.26) | $4,164.66 | $0.00 |
| 07/22/2019 | | $15.00 | Property Inspection | $19,242.48 | | | ($15.00) | $291,785.17 | ($1,655.26) | $4,179.66 | $0.00 |
| 07/26/2019 | | $21.75 | Legal Costs | $19,242.48 | | | ($21.75) | $291,785.17 | ($1,655.26) | $4,201.41 | $0.00 |
| 08/01/2019 | $1,611.65 | | Payment Due | $20,854.13 | | | | $291,785.17 | ($1,655.26) | $4,201.41 | $0.00 |
| 08/07/2019 | | | Credit to Escrow | $20,854.13 | | $1,593.00 | | $291,785.17 | ($62.26) | $4,201.41 | $0.00 |
| 08/16/2019 | | $64.46 | Late Charge | $20,854.13 | | | ($64.46) | $291,785.17 | ($62.26) | $4,265.87 | $0.00 |
| 08/16/2019 | | $15.00 | Property Inspection | $20,854.13 | | | ($15.00) | $291,785.17 | ($62.26) | $4,280.87 | $0.00 |
| 09/01/2019 | $1,611.65 | | Payment Due | $22,465.78 | | | | $291,785.17 | ($62.26) | $4,280.87 | $0.00 |
| 09/13/2019 | | $1,500.00 | Sheriff Deposit | $22,465.78 | | ($1,500.00) | | $291,785.17 | ($62.26) | $5,780.87 | $0.00 |
| 09/16/2019 | | $64.46 | Late Charge | $22,465.78 | | | ($64.46) | $291,785.17 | ($62.26) | $5,845.33 | $0.00 |
| 09/16/2019 | | $15.00 | Property Inspection | $22,465.78 | | | ($15.00) | $291,785.17 | ($62.26) | $5,860.33 | $0.00 |
| 09/25/2019 | | $70.00 | Legal Costs | $22,465.78 | | | ($70.00) | $291,785.17 | ($62.26) | $5,930.33 | $0.00 |
| 10/01/2019 | $1,611.65 | | Payment Due | $24,077.43 | | | | $291,785.17 | ($62.26) | $5,930.33 | $0.00 |
| 10/03/2019 | | $3,112.00 | Escrow Advance - Insurance | $24,077.43 | | ($3,112.00) | | $291,785.17 | ($3,174.26) | $5,930.33 | $0.00 |
| 10/16/2019 | | $64.46 | Late Charge | $24,077.43 | | | ($64.46) | $291,785.17 | ($3,174.26) | $5,994.79 | $0.00 |
| 10/16/2019 | | $15.00 | Property Inspection | $24,077.43 | | | ($15.00) | $291,785.17 | ($3,174.26) | $6,009.79 | $0.00 |
| 10/17/2019 | | $17.20 | Legal Costs | $24,077.43 | | | ($17.20) | $291,785.17 | ($3,174.26) | $6,026.99 | $0.00 |
| 10/17/2019 | | $595.00 | Legal Fees | $24,077.43 | | | ($595.00) | $291,785.17 | ($3,174.26) | $6,621.99 | $0.00 |
| 10/18/2019 | | $35.00 | Legal Costs | $24,077.43 | | | ($35.00) | $291,785.17 | ($3,174.26) | $6,656.99 | $0.00 |
| 10/21/2019 | | $46.20 | Legal Costs | $24,077.43 | | | ($46.20) | $291,785.17 | ($3,174.26) | $6,703.19 | $0.00 |
| 11/01/2019 | $1,611.65 | | Payment Due | $25,689.08 | | | | $291,785.17 | ($3,174.26) | $6,703.19 | $0.00 |
| **Total** | | | | | | | | $291,785.17 | ($3,174.26) | $6,703.19 | $0.00 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500

Attorneys for FREEDOM MORTGAGE
CORPORATION

| | |
|---|---|
| In Re: | Case No: 19-31145 - CMG |
| Kevin Michael O'connor | Judge: CHRISTINE M. GRAVELLE |
| | Chapter: 13 |

## CERTIFICATION OF SERVICE

1.    I, Aaron Thomas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents FREEDOM MORTGAGE CORPORATION in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.    On the date below, I sent a copy of the following pleadings and/or documents to the parties listed below:

Proof of Claim

3.    I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated:   01/08/2020                          /s/ *Aaron Thomas*
                                                          Aaron Thomas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| William H. Oliver, Jr.<br>2240 State Highway 33<br>Suite 112<br>Neptune, NJ 07753 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Albert Russo<br>Standing Chapter 13 Trustee<br>CN 4853<br>Trenton, NJ 08650-4853 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

ELECTRONIC-ONLY DOCUMENT

**FREEDOM MORTGAGE®**

PO BOX 50428
INDIANAPOLIS, IN 46250-0401

## Escrow Account Disclosure Statement

| Account Information | |
|---|---|
| Loan Number: | ▌▌▌▌▌ |
| Property Address: | 115 HAWTHORNE ST |
| | NEPTUNE NJ 07753-0000 |

RICHARD  INKELES
115 HAWTHORNE ST
NEPTUNE NJ 07753-3917

| | |
|---|---|
| Statement Date: | **11/25/2019** |
| Current Payment Amount: | **$1,611.65** |
| **New Payment Amount:** | **$1,698.07** |
| **New Payment Effective Date:** | **12/01/2019** |

You are receiving this statement because you have an escrow account with us. We have safeguards in place to ensure there is enough money in your account to cover your homeowners insurance, real estate taxes and mortgage insurance, if applicable. Based on our most recent escrow analysis, your account is balanced. Your escrow payments will remain the same until the next analysis.

| | |
|---|---|
| Projected Minimum Balance | $518.66 |
| - Required Minimum Balance | $518.66 |

The required minimum balance is also known as the escrow cushion.  The required minimum balance or escrow cushion is the amount that you are required to pay into your escrow account to cover unanticipated disbursements for escrow items or for disbursements that have to be made before the monthly escrow payments are available in your escrow account.

Part 1 provides your current and the new escrow payment amounts. Part 2 shows what has already happened in your account while Part 3 shows what we anticipate happening in your account over the next 12 months.  As tax and insurance amounts may be subject to change each year, the amounts in Part 3 are only estimates.



### Your Mortgage Payment

### Payment information beginning with your 12/01/2019 payment

| Payment Information | Current Monthly Payment | New Monthly Payment |
|---|---|---|
| Principal & Interest: | $1,438.74 | $1,438.74 |
| Escrow Payment: | $158.00 | $259.33 |
| Shortage Spread: | $14.91 | $0.00 |
| **Total Payment:** | **$1,611.65** | **$1,698.07** |

**NOTICE:** Freedom Mortgage Corporation is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose. However, in the event the debt has been discharged pursuant to or the addressee or recipient is under the protection of federal bankruptcy law, this communication is solely for informational purposes and is not an attempt to collect a debt.



**FREEDOM MORTGAGE®**

(This space intentionally left blank)

ELECTRONIC-ONLY DOCUMENT



**PART 2** | **Your Escrow Account History**

The chart below reflects what actually happened in your escrow account since the last analysis. This compares what we expected to occur with what actually happened.

| Date | What We Estimated to Pay In | Payment to Escrow | What We Estimated to Pay Out | What We Paid Out | | Description | Last Year's Estimated Balance | Actual Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Beginning Balance | **$1,106.00** | **$332.74** |
| Dec 2018 | $158.00 | $0.00 | $0.00 | $0.00 | | | $1,264.00 | $332.74 |
| Jan 2019 | $158.00 | $0.00 | $0.00 | $0.00 | | | $1,422.00 | $332.74 |
| Feb 2019 | $158.00 | $0.00 | $0.00 | $0.00 | | | $1,580.00 | $332.74 |
| Mar 2019 | $158.00 | $0.00 | $0.00 | $0.00 | | | $1,738.00 | $332.74 |
| Apr 2019 | $158.00 | $0.00 | $0.00 | $0.00 | | | $1,896.00 | $332.74 |
| May 2019 | $158.00 | $0.00 | $0.00 | $1,988.00 | * | HOMEOWNERS | $2,054.00 | ($1,655.26) |
| Jun 2019 | $158.00 | $0.00 | $1,896.00 | $0.00 | | HOMEOWNERS INSURANCE | $316.00 | ($1,655.26) |
| Jul 2019 | $158.00 | $0.00 | $0.00 | $0.00 | | | $474.00 | ($1,655.26) |
| Aug 2019 | $158.00 | $1,593.00 | $0.00 | $0.00 | | | $632.00 | ($62.26) |
| Sep 2019 | $158.00 | $0.00 | $0.00 | $0.00 | | | $790.00 | ($62.26) |
| Oct 2019 | $158.00 | $0.00 | $0.00 | $3,112.00 | * | FORCED PLACE HO | $948.00 | ($3,174.26) |
| Nov 2019 | $158.00 | $0.00 | $0.00 | $0.00 | E | | $1,106.00 | ($3,174.26) |
| **Total** | **$1,896.00** | **$1,593.00** | **$1,896.00** | **$5,100.00** | | | | |

An asterisk (*) indicates a difference in that month between the actual activity and the estimated activity.

When applicable, the letter "E" beside an amount indicates that a payment or disbursement has not yet occurred but is estimated to occur as shown.

LOAN NUMBER: ███████

(This space intentionally left blank)

ELECTRONIC-ONLY DOCUMENT

**FREEDOM MORTGAGE**®

PO BOX 50428
INDIANAPOLIS, IN 46250-0401

RICHARD INKELES
115 HAWTHORNE ST
NEPTUNE NJ 07753-3917

## Escrow Account Disclosure Statement

| Account Information | Page 2 |
|---|---|

| | |
|---|---|
| Loan Number: | |
| Property Address: | 115 HAWTHORNE ST |
| | NEPTUNE NJ 07753-0000 |
| Statement Date: | **11/25/2019** |
| Current Payment Amount: | **$1,611.65** |
| **New Payment Amount:** | **$1,698.07** |
| **New Payment Effective Date:** | **12/01/2019** |

---

**PART 3**

### Expected Escrow Payments over the next 12 Months

| | |
|---|---|
| FORCED PLACE H | $3,112.00 |
| **Total Disbursements** | **$3,112.00** |

Freedom expects to pay $3,112.00 over the next 12 months.

Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total Disbursements: | $3,112.00 |
| ÷ 12 Months: | 12 |
| **New Monthly Escrow Payment** | **$259.33** |

### Summary of Your Projected Escrow Account for the Coming Year

| Date | Payment to Escrow | What We Expect to Pay Out | Description | Your Actual Balance | Balance Needed In Your Account |
|---|---|---|---|---|---|
| | | | Beginning Balance | $1,296.69 | $1,296.69 |
| Dec 2019 | $259.33 | $0.00 | | $1,556.02 | $1,556.02 |
| Jan 2020 | $259.33 | $0.00 | | $1,815.35 | $1,815.35 |
| Feb 2020 | $259.33 | $0.00 | | $2,074.68 | $2,074.68 |
| Mar 2020 | $259.33 | $0.00 | | $2,334.01 | $2,334.01 |
| Apr 2020 | $259.33 | $0.00 | | $2,593.34 | $2,593.34 |
| May 2020 | $259.33 | $0.00 | | $2,852.67 | $2,852.67 |
| Jun 2020 | $259.33 | $0.00 | | $3,112.00 | $3,112.00 |
| Jul 2020 | $259.33 | $0.00 | | $3,371.33 | $3,371.33 |
| Aug 2020 | $259.33 | $3,112.00 | FORCED PLACE HO | $518.66 | $518.66 * |
| Sep 2020 | $259.33 | $0.00 | | $777.99 | $777.99 |
| Oct 2020 | $259.33 | $0.00 | | $1,037.32 | $1,037.32 |
| Nov 2020 | $259.33 | $0.00 | | $1,296.65 | $1,296.65 |
| | $3,111.96 | $3,112.00 | | | |

The required minimum balance, as indicated by the asterisk (*) in the summary above, is determined by the Real Estate Settlement Procedures Act (RESPA), your mortgage contract or state law. Your minimum balance may include up to two months of escrow payments (excluding PMI/MIP) to cover increases to your taxes and homeowners insurance.

---

**PART 4**

### What This Means to You

There's exactly enough money in your account to cover what's needed to pay your taxes and insurance.

Did you know by having recurring payments set up through FreedomMortgage.com, we'll adjust for any changes in your monthly payment automatically? However, if you have automatic bill pay through your bank, you'll need to contact them directly to adjust your payment.

**PART 5**

### How You Can Reach Us with Questions

Should you have any questions regarding the information provided in this statement please do not hesitate to contact us at (855) 690-5900. Customer Care representatives are available to assist you Monday through Friday from 8:00am – 10:00pm and Saturday from 9:00am – 6:00pm Eastern Time.

LOAN NUMBER:

ELECTRONIC-ONLY DOCUMENT

```
RICHARD  INKELES                    YOUR LOAN NUMBER:  ███████
115 HAWTHORNE STREET                BANKRUPTCY CASE #  ███████
NEPTUNE          NJ 07753-0000

                                    DATE: 11/08/19


    *** ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT - PROJECTIONS ***

PLEASE REVIEW THIS STATEMENT CLOSELY - YOUR MORTGAGE PAYMENT MAY BE AFFECTED.
THIS STATEMENT TELLS YOU OF ANY CHANGES IN YOUR MORTGAGE PAYMENT, ANY SURPLUS
REFUNDS, OR ANY SHORTAGE YOU MUST PAY. IT ALSO SHOWS YOU THE ANTICIPATED
ESCROW ACTIVITY FOR YOUR ESCROW CYCLE  BEGINNING    12/19 THROUGH    11/20.
------- ANTICIPATED PAYMENTS FROM ESCROW -    12/19 THROUGH    11/20 -------
               FORCED PLACE HO           3112.00

           TOTAL PAYMENTS FROM ESCROW    3112.00

           MONTHLY PAYMENT TO ESCROW        259.33 (1/12TH OF ABOVE TOTAL)


------- ANTICIPATED ESCROW ACTIVITY -   12/19 THROUGH   11/20--------
        -ANTICIPATED PAYMENTS-          -- ESCROW BALANCE COMPARISON --
MONTH  TO ESCROW  FROM ESCROW  DESCRIPTION   ANTICIPATED       REQUIRED
                    ACTUAL STARTING BALANCE      -505.02        1296.69
DEC 19   259.33                               -245.69          1556.02
JAN 20   259.33                                 13.64          1815.35
FEB 20   259.33                                272.97          2074.68
MAR 20   259.33                                532.30          2334.01
APR 20   259.33                                791.63          2593.34
MAY 20   259.33                               1050.96          2852.67
JUN 20   259.33                               1310.29          3112.00
JUL 20   259.33                               1569.62          3371.33
AUG 20   259.33    3112.00  FORCED PLACE ALP  -1283.05    RLP   518.66
SEP 20   259.33                               -1023.72          777.99
OCT 20   259.33                                -764.39         1037.32
NOV 20   259.33                                -505.06         1296.65

------------ DETERMINING THE SUFFICIENCY OF YOUR ESCROW BALANCE ------------


IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS LESS THAN THE REQUIRED BALANCE
(RLP), THEN YOU HAVE AN ESCROW SHORTAGE. YOUR ESCROW SHORTAGE IS    -1801.71.


IF THE ANTICIPATED LOW POINT BALANCE (ALP) IS GREATER THAN THE REQUIRED
BALANCE (RLP), THEN YOU HAVE AN ESCROW SURPLUS. YOUR SURPLUS IS        0.00.
```

```
*ADJUSTED ESCROW SHORTAGE IS                                      0.00.
----------------- CALCULATION OF YOUR NEW PAYMENT AMOUNT -----------------
            PRINCIPAL & INTEREST                     1438.74
            ESCROW (1/12TH OF ANNUAL ANTICIPATED      259.33
                DISBURSEMENTS AS COMPUTED ABOVE)
            PLUS: OPTIONAL INSURANCE PREMIUMS            0.00
            PLUS: REPLACEMENT RESERVE OR FHA SVC CHG     0.00
            PLUS: SHORTAGE PAYMENT                     150.14
            MINUS: SURPLUS CREDIT                        0.00
            ROUNDING ADJUSTMENT                          0.00
            MINUS: BUYDOWN/ASSISTANCE PAYMENTS           0.00


BORROWER PAYMENT STARTING WITH THE PAYMENT DUE 12/01/19     1848.21
NOTE: YOUR ESCROW BALANCE MAY CONTAIN A CUSHION. A CUSHION IS AN AMOUNT OF
MONEY HELD IN YOUR ESCROW ACCOUNT TO PREVENT YOUR ESCROW BALANCE FROM BEING
OVERDRAWN WHEN INCREASES IN THE DISBURSEMENTS OCCUR. FEDERAL LAW AUTHORIZES
A MAXIMUM ESCROW CUSHION NOT TO EXCEED 1/6TH OF THE TOTAL ANNUAL ANTICIPATED
ESCROW DISBURSEMENTS MADE DURING THE ABOVE CYCLE. THIS AMOUNT IS      518.66.
YOUR LOAN DOCUMENTS OR STATE LAW MAY REQUIRE A LESSER CUSHION. WHEN YOUR
ESCROW BALANCE REACHES ITS LOWEST POINT DURING THE ABOVE CYCLE, THAT BALANCE
IS TARGETED TO BE YOUR CUSHION AMOUNT.

YOUR ESCROW CUSHION FOR THIS CYCLE IS       518.66.

YOUR ANTICIPATED ESCROW BALANCE CONSISTS OF THE FOLLOWING DETAIL (AN * NEXT
TO AN AMOUNT INDICATES THIS IS A TOTAL THAT REPRESENTS MORE THAN ONE PAYMENT
TO OR DISBURSEMENT FROM ESCROW):
ESCROW PAYMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
08/18      148.58      09/18      148.58      10/18      2372.08   *
ESCROW DISBURSEMENTS UP TO ESCROW ANALYSIS EFFECTIVE DATE:
00/00      0.00                   00/00      0.00
00/00      0.00                   00/00      0.00
```

# Note

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

January 3, 2013                    Coraopolis                    PA
    *[Date]*                         *[City]*                    *[State]*

115 Hawthorne St
Neptune, NJ 07753
*[Property Address]*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $330,586.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Freedom Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      3.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st  day of each month beginning on March 1, 2013         . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1, 2043       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 8068, Virginia Beach, VA  23450-8068

or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $   1,438.74          .

### 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT-Veterans Affairs
VMP ®
Wolters Kluwer Financial Services

Form 3200  1/01
Amended 8/00
VMP6G (1100).00
Page 1 of 3

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        4.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT-Veterans Affairs
VMP ®
Wolters Kluwer Financial Services

Form 3200  1/01
Amended 6/00
VMP5G (1103).00
Page 2 of 3

## 10. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge        ☐ Other [Specify]        ☐ Other [Specify]

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)                    _____(Seal)
Richard Inkeles                          -Borrower                                                      -Borrower

_____(Seal)                    _____(Seal)
                                          -Borrower                                                      -Borrower

*[Sign Original Only]*

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT-Veterans Affairs
VMP ®
Wolters Kluwer Financial Services

Form 3200  1/01
Amended 6/00
VMP5G (1103).00
Page 3 of 3

Pay to the order of

_____

without recourse this _____ day of _____ 20____

Freedom Mortgage Corporation

Stanley C. Middleman
President/Chief Executive Officer



# Monmouth County Document Summary Sheet

| Transaction Identification Number | ████████████ |
|---|---|

MONMOUTH COUNTY CLERK

PO BOX 1251

MARKET YARD

FREEHOLD NJ 07728

**Recorded Document to be Returned by Submitter to:**

LSI- CUSTOM RECORDING SOLUTIONS

5 PETERS CANYON ROAD

SUITE 200

IRVINE, CA 92606

**Official Use Only**

M CLAIRE FRENCH,CTY CLK
MONMOUTH COUNTY,NJ

INSTRUMENT NUMBER
2013005878
RECORDED ON
Jan 15, 2013
9:23:46 AM
BOOK:OR-8991 PAGE:6412
Total Pages: 21

COUNTY RECORDING FEES  $210.00
TOTAL PAID            $210.00

| | |
|---|---|
| Submission Date *(mm/dd/yyyy)* | 01/14/2013 |
| No. of Pages *(excluding Summary Sheet)* | 19 |
| Recording Fee *(excluding transfer tax)* | $210.00 |
| Realty Transfer Tax | $0.00 |
| Total Amount | $210.00 |

| Document Type | MORTGAGE |
|---|---|

**Electronic Recordation Level**

L2 - Level 2 (With Images)

**Municipal Codes**

| NEPTUNE TOWNSHIP | 3501 |
|---|---|

**Bar Code(s)**

## Additional Information (Official Use Only)

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Monmouth County Document Summary Sheet

| Type | MORTGAGE |
|---|---|
| Consideration | $330,586.00 |
| Submitted By | LENDER PROCESSING SERVICE |
| Document Date | 01/03/2013 |

| Reference Info | | | | |
|---|---|---|---|---|
| **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
| | | | | |

| MORTGAGOR | Name | Address |
|---|---|---|
| | RICHARD INKELES | |

| MORTGAGEE | Name | Address |
|---|---|---|
| | FREEDOM MORTGAGE CORPORATION | |

| Parcel Info | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Return To:

Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001

**Recording requested by: LSI**
**When recorded return to :**
**Custom Recording Solutions**
**5 Peters Canyon Road Suite 200**
**Irvine, CA 92606** ███████████
**800-756-3524 Ext. 5011**

———————————————[Space Above This Line For Recording Data]———————————————

# MORTGAGE

MIN ██████████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated January 3, 2013
together with all Riders to this document.
**(B) "Borrower"** is Richard  Inkeles, a widow.

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ████████████

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3031 1/01

-6A(NJ) (0810)
Page 1 of 15          Initials: _RI_

VMP Mortgage Solutions, Inc.

**(D) "Lender"** is Freedom Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of The State of New Jersey
Lender's address is 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ  08054

**(E) "Note"** means the promissory note signed by Borrower and dated January 3, 2013
The Note states that Borrower owes Lender Three Hundred Thirty Thousand Five
Hundred Eighty Six and 00/100                                                      **Dollars**
(U.S. $ 330,586.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than February 1, 2043           .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☒ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the County                                of Monmouth                                             :
          [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Property Account Number: ███████████████                    which currently has the address of
115 Hawthorne St                                                                    [Street]
Neptune                                              [City], New Jersey 07753        [Zip Code]
("Property Address"):

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®-6A(NJ) (0810)                      Page 3 of 15           Initials: _K I_           Form 3031 1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.





Initials:

VMP® -6A(NJ) (0512)                    Page 9 of 15                    Form 3031 1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
-6A(NJ) (0810)                         Page 12 of 15                    Initials: _K I_          Form 3031 1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Section 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____          _____(Seal)
                                          Richard Inkeles                -Borrower


_____          _____(Seal)
                                                                         -Borrower


_____(Seal)       _____(Seal)
                    -Borrower                                             -Borrower


_____(Seal)       _____(Seal)
                    -Borrower                                             -Borrower


_____(Seal)       _____(Seal)
                    -Borrower                                             -Borrower

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP -6A(NJ) (0810)                     Page 14 of 15          Initials: _____        Form 3031 1/01

**STATE OF NEW JERSEY,** Monmouth                              **County ss:**

On this 3RD day of JANUARY 2013 , before me, the subscriber,
personally appeared
Richard Inkeles

who, I am satisfied,
is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that
he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein
expressed.

_Howard Jay Altman_
Notary Public

HOWARD JAY ALTMAN

**HOWARD JAY ALTMAN**
ID # ▮▮▮▮▮▮▮
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7/24/2013

**NEW JERSEY** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**
-6A(NJ) (0810)                    Page 15 of 15          Initials: _RI_          **Form 3031 1/01**

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 3rd              day of January, 2013                , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to Freedom Mortgage Corporation

(herein "Lender") and covering the Property described in the Security Instrument and located at
115 Hawthorne St
Neptune, NJ 07753
[Property Address]

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**MULTISTATE VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER WITHOUT GUARANTY**

VMP -539R (0310)                    10/03
Page 1 of 3          Initials:
VMP Mortgage Solutions (800)521-7291

LATE CHARGE: At Lender's option, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the Property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the Property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to five tenths                  ( 0.500 %) of the balance of this loan as of the date of transfer of the Property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

Initials: _R I_

VMP®-539R (0310)                  Page 2 of 3

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____          _____
Richard Inkeles                -Borrower                                        -Borrower

_____          _____
                               -Borrower                                        -Borrower

_____          _____
                               -Borrower                                        -Borrower

_____          _____
                               -Borrower                                        -Borrower

-539R (0310)                    Page 3 of 3

Order ID <br>Loan No

# EXHIBIT A
## LEGAL DESCRIPTION

The following described property:

All that tract or parcel of land and premises, situate, lying and being in the Township of Neptune in the County of Monmouth and State of New Jersey, more particularly described as follows:

Being known and designated as Lots 34, 35, 36 and 37 in Block 2 on the Official Tax Map of the Township of Neptune, County of Monmouth and State of New Jersey, and more particularly described as follows:

Beginning at a point in the Westerly side of Hawthorne Street distant 150 feet Southerly from the Southwest corner of Prospect Place and Hawthorne Street; running thence (1) South 1 degree East, along the Westerly side of Hawthorne Street, 100 feet to an iron pipe placed for a marker; thence (2) along the Northerly line of Lot 33, South 89 degrees West, 106 feet to a wooden stake; thence (3) North 1 degree West, parallel to the First course, 100 feet, to an iron pipe placed for a market, at the Southwest corner of Lot 38; thence (4) North 89 degrees East, along the Southerly line of Lot 38, and parallel to the Second course, 106 feet to an iron placed for a marker in the Westerly side of Hawthorne Street, and the point and place of beginning.

Assessor's Parcel Number: ███████████████



**Monmouth County Document Summary Sheet**

| | |
|---|---|
| MONMOUTH COUNTY CLERK<br>PO BOX 1251<br>MARKET YARD<br>FREEHOLD NJ 07728 | **Transaction Identification Number** ▇▇▇▇▇▇▇ |

**Recorded Document to be Returned by Submitter to:**

FREEDOM MORTGAGE CORPORATION

500 VIRGINIA DR, STE 502

FT WASHINGTON, PA 19034

**Official Use Only**

```
CHRISTINE GIORDANO HANLON
      COUNTY CLERK
   MONMOUTH COUNTY, NJ

   INSTRUMENT NUMBER
      2018118947
     RECORDED ON
     Dec 12, 2018
      9:25:33 AM
BOOK:OR-9326 PAGE:6960
    Total Pages: 3

COUNTY RECORDING FEES  $40.00
EFILE CONVENIENCE FEE   $2.00
TOTAL PAID             $42.00
```

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 12/10/2018 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)*<br>*(Convenience Fee of $2.00 included)* | $42.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $42.00 |
| **Document Type** | ASSIGNMENT/MORTGAGE |
| **Electronic Recordation Level** | L2 - Level 2 (With Images) |

**Municipal Codes**

MONMOUTH COUNTY                                   99

**Bar Code(s)**

▇▇▇▇

**Additional Information (Official Use Only)**

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

Page 1 of 2

**Monmouth County Document Summary Sheet**

| | | | | | |
|---|---|---|---|---|---|
| | **Type** | ASSIGNMENT/MORTGAGE | | | |
| | **Consideration** | | | | |
| | **Submitted By** | FREEDOM MORTGAGE CORPORATION (CSC/INGEO SYSTEMS INC) | | | |
| | **Document Date** | 12/10/2018 | | | |
| | **Reference Info** | | | | |
| | **Book ID** | **Book** | **Beginning Page** | **Instrument No.** | **Recorded/File Date** |
| | OR | 8991 | 6412 | 2013005878 | |

| | | | |
|---|---|---|---|
| ASSIGNMENT/M ORTGAGE | MORTGAGOR AND ASSIGNOR | **Name** | **Address** |
| | | RICHARD INKELES | |
| | | FREEDOM MORTGAGE CORPORATION | |
| | | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC | |
| | ASSIGNEE | **Name** | **Address** |
| | | FREEDOM MORTGAGE CORPORATION | |

| **Parcel Info** | | | | | |
|---|---|---|---|---|---|
| **Property Type** | **Tax Dist.** | **Block** | **Lot** | **Qualifier** | **Municipality** |
| | | | | | |

*\* DO NOT REMOVE THIS PAGE.*
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF  MONMOUTH COUNTY FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

RECORDING REQUESTED AND PREPARED BY:
**Freedom Mortgage Corporation**
**Shannon Townsend**
**500 Virginia Dr**
**Ste 502**
**Ft Washington PA 10934**
**(855) 690-5900**

AND WHEN RECORDED MAIL TO:
**Freedom Mortgage Corporation**
**AOM Dept**
**500 Virginia Dr, Ste 502**
**Ft Washington, PA 19034**

Loan █████████
MIN: █████████
MERS Phone #: **(888) 679-6377**

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its successors and assigns**, P.O. Box 2026, Flint, MI 48501-2026, by these presents does convey, assign, transfer and set over to **Freedom Mortgage Corporation, 907 Pleasant Ave Ste 3, Mount Laurel, NJ 08054,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$330586.00**, is recorded in the State of **NEW JERSEY**, County of **Monmouth** Official Records, dated **01/03/2013** and recorded on **01/15/2013**, as Instrument No. **2013005878** in Book No. **OR-8991**, at Page No. **6412**

Original Mortgagor: **Richard Inkeles, a widow.**

Original Mortgagee: **Mortgage Electronic Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its successors and assigns**

Property Address: **115 Hawthorne St Neptune, NJ 07753**

Date: **12/10/2018**

**Mortgage Electronic Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its successors and assigns**

By:

*Howard D. Wiggins II*

Name: **HOWARD D WIGGINS II**
Title: **Assistant Secretary**

STATE OF **PA**
COUNTY OF **MONTGOMERY** } s.s.

On **12/10/2018**, before me, Roseann McKenry, Notary Public, personally appeared **HOWARD D WIGGINS II, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc., solely as nominee for Freedom Mortgage Corporation, its successors and assigns,** personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

*Roseann McKenry*

Notary Public: **Roseann McKenry**
My Commission Expires: **04/08/2020**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Roseann McKenry, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires April 8, 2020

# EXHIBIT B

**STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.**

| 0 | Valuation of Security | 0 | Assumption of Executory Contract or Unexpired Lease | 0 | Lien Avoidance |

Last revised: September 1, 2018

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:

Kevin M. O'Connor

Case No.: _____19-31145_____

Judge: _____CMG_____

Debtor(s)

### 1st Modified
## Chapter 13 Plan and Motions

☒ Original   ☐ Modified/Notice Required   Date: __01/07/2020__

☐ Motions Included   ☐ Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

**YOUR RIGHTS MAY BE AFFECTED**

You should have received from the court a separate *Notice of the Hearing on Confirmation of Plan*, which contains the date of the confirmation hearing on the Plan proposed by the Debtor.  This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney.  Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the *Notice*.  Your rights may be affected by this plan.  Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien.  The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate.  An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

**The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.**

THIS PLAN:

☐ DOES ☒ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☒ DOES ☐ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☒ DOES ☐ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: __/s/WHO__   Initial Debtor: ____/s/KO____   Initial Co-Debtor: _____

| Part 1: | Payment and Length of Plan |
|---|---|

a. The debtor shall pay $ _____ 545.00 _____ per _____ month _____ to the Chapter 13 Trustee, starting on _____ February 1, 2020 _____ for approximately _____ 58 _____ months.

b. The debtor shall make plan payments to the Trustee from the following sources:

☒ Future earnings

☐ Other sources of funding (describe source, amount and date when funds are available):

c. Use of real property to satisfy plan obligations:

☐ Sale of real property
Description:
Proposed date for completion: _____

☐ Refinance of real property:
Description:
Proposed date for completion: _____

☒ Loan modification with respect to mortgage encumbering property:
Description: 115 Hawthorne St., Neptune, NJ 07753
Proposed date for completion: 6 months after confirmation

d. ☐ The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e. ☐ Other information that may be important relating to the payment and length of plan:

**Part 2:    Adequate Protection ☒ NONE**

a.  Adequate protection payments will be made in the amount of $ _____ to be paid to the Chapter 13 Trustee and disbursed pre-confirmation to _____ (creditor).

b.  Adequate protection payments will be made in the amount of $ _____ to be paid directly by the debtor(s) outside the Plan, pre-confirmation to: _____ (creditor).

**Part 3:    Priority Claims (Including Administrative Expenses)**

a.    All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| CHAPTER 13 STANDING TRUSTEE | ADMINISTRATIVE | AS ALLOWED BY STATUTE |
| ATTORNEY FEE BALANCE | ADMINISTRATIVE | BALANCE DUE: $ 4,160.00 |
| DOMESTIC SUPPORT OBLIGATION | | |

b.  Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount: Check one:

☒ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C.1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount. | | |

## Part 4: Secured Claims

**a. Curing Default and Maintaining Payments on Principal Residence:** ☐ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| Freedom Mortgage | 115 Hawthorne St., Neptune, NJ 07753 | $21,566.00 | 0 | $21,566.00 | $1,947.16 |
| Township of Neptune - Sewer Utility | 115 Hawthorne St., Neptune, NJ 07753 | $239.51 | 0 | $2,879.42 | |
| Township of Neptune Tax | 115 Hawthorne St., Neptune, NJ 07753 | $2,534.94 | 18% | $1,348.00 | |

**b. Curing and Maintaining Payments on Non-Principal Residence & other loans or rent arrears:** ☒ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor | Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|---|
| | | | | | |

**c. Secured claims excluded from 11 U.S.C. 506:** ☒ **NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor | Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|---|
| | | | | |

**d. Requests for valuation of security, Cram-down, Strip Off & Interest Rate Adjustments** ☒ **NONE**

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES
the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

**e. Surrender** ☒ **NONE**

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
|  |  |  |  |

**f. Secured Claims Unaffected by the Plan** ☐ **NONE**

The following secured claims are unaffected by the Plan:

Toyota Financial Services to be paid outside of the plan.

**g. Secured Claims to be Paid in Full Through the Plan**: ☒ **NONE**

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|---|---|---|
|  |  |  |

---

**Part 5:     Unsecured Claims** ☒ **NONE**

**a. Not separately classified** allowed non-priority unsecured claims shall be paid:

☒ Not less than $ _0_____ to be distributed *pro rata*

☐ Not less than _____ percent

☐ *Pro Rata* distribution from any remaining funds

**b. Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
|  |  |  |  |

**Part 6:    Executory Contracts and Unexpired Leases  ☒ NONE**

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|---|---|---|---|---|
|  |  |  |  |  |

**Part 7:    Motions  ☒ NONE**

**NOTE:  All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal*, within the time and in the manner set forth in D.N.J. LBR 3015-1. A *Certification of Service*, *Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.**

**a.  Motion to Avoid Liens Under 11. U.S.C. Section 522(f).   ☒ NONE**

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor | Nature of Collateral | Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

**b. Motion to Avoid Liens and Reclassify Claim from Secured to Completely Unsecured.** ☒ **NONE**

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|----------|-----------|----------------|------------------------|----------------|---------------------------------------------|------------------------------------------|
|          |           |                |                        |                |                                             |                                          |

**c. Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.** ☒ **NONE**

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor | Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|----------|-----------|----------------|------------------------|-----------------------------|-----------------------------------------|
|          |           |                |                        |                             |                                         |

## Part 8: Other Plan Provisions

**a. Vesting of Property of the Estate**

☒ Upon confirmation

☐ Upon discharge

**b. Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

**c. Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:

1) Ch. 13 Standing Trustee commissions

2) Other Administrative Claims - William H. Oliver

3) Secured Claim

4) Priority Claims; 5) General unsecured claims

**d. Post-Petition Claims**

The Standing Trustee ☐ is, ☒ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

---

**Part 9:    Modification  ☐ NONE**

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being modified: 11/06/2019                          .

| Explain below **why** the plan is being modified: | Explain below **how** the plan is being modified: |
|---|---|
| Debtor is now applying for a loan modification<br>Removing vehicle cram | part 1c: adding loan modification<br>part 4d: remove Toyota Financial Services to be crammed<br>part 4f: add Toyota Financial Services to be paid outside of bankruptcy<br>part 7c: remove Toyota Financial Services to be crammed |

Are Schedules I and J being filed simultaneously with this Modified Plan?    ☐ Yes    ☐ No

---

**Part 10:    Non-Standard Provision(s): Signatures Required**

Non-Standard Provisions Requiring Separate Signatures:

☒ NONE

☐ Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

# Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, *Chapter 13 Plan and Motions*, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: 01/07/2020 _____

/s/ Kevin M. O'Connor _____
Debtor

Date: _____

_____
Joint Debtor

Date: 01/07/2020 _____

/s/ William H. Oliver, Jr. _____
Attorney for Debtor(s)

United States Bankruptcy Court
District of New Jersey

In re:                                                              Case No. 19-31145-CMG
Kevin Michael O'Connor                                              Chapter 13
        Debtor

# CERTIFICATE OF NOTICE

District/off: 0312-3        User: admin           Page 1 of 2        Date Rcvd: Jan 09, 2020
                           Form ID: pdf901        Total Noticed: 23

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Jan 11, 2020.
```
db              Kevin Michael O'Connor,   115 Hawthorne Street,   Neptune, NJ   07753-3917
cr             +FREEDOM MORTGAGE CORPORATION,   Phelan Hallinan & Schmieg, PC,   1617 JFK Boulevard,
                 Suite 1400,   Philadelphia, PA 19103-1814
518559277      +Citi/Sears,   Po Box 6283,   Sioux Falls, SD 57117-6283
518559276      +Citi/Sears,   Citibank/Centralized Bankruptcy,   Po Box 790034,   St Louis, MO 63179-0034
518559279      +Citibank North America,   Po Box 6497,   Sioux Falls, SD 57117-6497
518559278      +Citibank North America,   Citibank Corp/Centralized Bankruptcy,   Po Box 790034,
                 St Louis, MO 63179-0034
518652987      +FREEDOM MORTGAGE CORPORATION,   FREEDOM MORTGAGE,   Bankruptcy Department,
                 10500 KINCAID DRIVE,   FISHERS IN 46037-9764
518559280      +Freedom Mortgage,   PO Box 619063,   Dallas, TX 75261-9063
518559281      +Freedom Mortgage Corp,   c/o Pluese, Becker & Saltzman,   20000 Horizon Way, Ste 900,
                 Mount Laurel, NJ 08054-4318
518559283      +Master Card,   PO Box 6276,   Sioux Falls, SD 57117-6276
518559284      +Monmouth County Sheriff,   Foreclosure Unit,   2500 Kozloski Road,   Freehold, NJ 07728-4424
518559285      +Santander Bank,   Mail Code: MA1-MB3-01-21,   2 Morrissey Boulevard,   Boston, MA 02125-3312
518559286      +Santander Bank,   Po Box 12646,   Reading, PA 19612-2646
518559287      +State of New Jersey,   Department of Treasury,   P. O. Box 245,   Trenton, NJ 08602-0245
518559290     ++TOYOTA MOTOR CREDIT CORPORATION,   PO BOX 8026,   CEDAR RAPIDS IA 52408-8026
                (address filed with court:  Toyota Financial Services,   Attn: Bankruptcy Dept,   Po Box 8026,
                 Cedar Rapids, IA 52409)
518559289      +Township of Neptune - Sewer Utility,   25 Neptune Blvd.,   Neptune, NJ 07753-4814
518559291       Toyota Financial Services,   111 W 22nd St,   Oakbrook, IL 60521
518574964      +Toyota Motor Credit Corporation,   PO Box 9013,   Addison, Texas 75001-9013
```

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
```
smg             E-mail/Text: usanj.njbankr@usdoj.gov Jan 10 2020 00:10:20    U.S. Attorney,   970 Broad St.,
                 Room 502,   Rodino Federal Bldg.,   Newark, NJ 07102-2534
smg            +E-mail/Text: ustpregion03.ne.ecf@usdoj.gov Jan 10 2020 00:10:17    United States Trustee,
                 Office of the United States Trustee,   1085 Raymond Blvd.,   One Newark Center,   Suite 2100,
                 Newark, NJ 07102-5235
518559282       E-mail/Text: cio.bncmail@irs.gov Jan 10 2020 00:09:55    Internal Service Revenue,
                 PO Box 7346,   Philadelphia, PA 19101-7346
518561953      +E-mail/PDF: gecsedi@recoverycorp.com Jan 10 2020 00:20:28    Synchrony Bank,
                 c/o of PRA Receivables Management, LLC,   PO Box 41021,   Norfolk, VA 23541-1021
518559288      +E-mail/Text: MNARCISO@NEPTUNETOWNSHIP.ORG Jan 10 2020 00:10:51    Township of Neptune,
                 Tax Collector's,   PO Box 1167,   Neptune, NJ 07754-1167
                                                                                       TOTAL: 5
```

```
          ***** BYPASSED RECIPIENTS *****
NONE.                                                                                   TOTAL: 0
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

Addresses marked '++' were redirected to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.PR.2002(g)(4).

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jan 11, 2020                        Signature:  /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on January 8, 2020 at the address(es) listed below:
```
          Albert Russo   docs@russotrustee.com
          Andrew L. Spivack   on behalf of Creditor   FREEDOM MORTGAGE CORPORATION nj.bkecf@fedphe.com
          Denise E. Carlon   on behalf of Creditor   Toyota Motor Credit Corporation
           dcarlon@kmllawgroup.com,   bkgroup@kmllawgroup.com
          Robert Davidow   on behalf of Creditor   FREEDOM MORTGAGE CORPORATION nj.bkecf@fedphe.com
```

District/off: 0312-3        User: admin               Page 2 of 2           Date Rcvd: Jan 09, 2020
                            Form ID: pdf901         Total Noticed: 23

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
        U.S. Trustee    USTPRegion03.NE.ECF@usdoj.gov
         William H. Oliver, Jr.   on behalf of Debtor Kevin Michael O'Connor woliver@oliverandlegg.com,
        R59915@notify.bestcase.com

                                                            TOTAL: 6

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

833099
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for FREEDOM MORTGAGE
CORPORATION

| In Re:<br><br>KEVIN MICHAEL O'CONNOR | Case No:  19-31145 - CMG<br><br>Hearing Date: 03/04/2020<br><br>Judge:  CHRISTINE M. GRAVELLE<br><br>Chapter:  13 |
|---|---|

### CERTIFICATION OF SERVICE

1.    I, Jessica Gregg:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC, who represents FREEDOM MORTGAGE CORPORATION in the above captioned matter.

☐ am the _____ in the above case and am representing myself.

2.    On February 5, 2020 I sent a copy of the following pleadings and/or documents to the parties listed below:

Objection to Plan

3.    I hereby certify under penalty of perjury that the above documents were sent using the mode of service indicated.

Dated:  February 5, 2020                    /s/  *Jessica Gregg*
                                                              Jessica Gregg

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
| --- | --- | --- |
| Kevin Michael O'Connor<br>115 Hawthorne Street<br>Neptune, NJ 07753 | Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| Richard Inkeles<br>115 Hawthorne Street<br>Neptune, NJ 07753 | Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| William  H. Oliver, Jr., Esquire<br>2240 State Highway 33<br>Suite 112<br>Neptune, NJ 07753 | Debtor's Attorney | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| Albert Russo, Trustee<br>Standing Chapter 13 Trustee<br>Cn4853<br>Trenton, NJ 08650 | Trustee | ☐ Hand-delivered<br>☐ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| US Trustee<br>US Dept of Justice | US Trustee | ☐ Hand-delivered |

| | | |
|---|---|---|
| Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | | ☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

\* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

3